## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AVERY RENEE WEBSTER     )
                                       )
     *Plaintiff,*           )
                                       )
v.                            )     Case No. 1:15-cv-1261-RCL
                                       )
UNITED STATES DEPARTMENT     )
OF ENERGY                  )
                                       )
     *Defendant.*         )
                                       )

## MEMORANDUM OPINION

In 2015, plaintiff Avery Renee Webster filed suit against the Department of Energy ("DOE") for alleged racial, gender, and disability discrimination and for allegedly creating a hostile work environment. DOE filed a Motion to Dismiss and for Summary Judgment in 2016, which the Court granted in part and denied in part. The Court ordered full discovery to give Ms. Webster the opportunity to explore her surviving claims. DOE has since filed a Renewed Motion for Summary Judgment (ECF No. 70). After considering that motion, Ms. Webster's opposition (ECF No. 71), and DOE's reply (ECF No. 74), the Court will **GRANT** Defendant's Renewed Motion for Summary Judgment and **DISMISS** the case with prejudice.

## BACKGROUND

In its previous opinion issued on August 25, 2017, the Court summarized the background of this case as follows:

> Plaintiff, who is an African American female, was employed by DOE as an attorney examiner in the Office of Hearings and Appeals ("OHA") from August 2007 through April 2012. Plaintiff's supervisors were Ms. Ann S. Augustyn, Ms. Janet N. Freimuth, Mr. Fred L. Brown, and Mr. Poli A. Marmolejos. Plaintiff's complaint is based on several specific events that occurred throughout the course of her

employment, some of which occurred during her high risk pregnancy from October 2010 through July 2011. They are as follows: 1) she was denied regular flexi-place in February 2011; 2) she was denied medical flexi-place in February 2011; 3) she was denied the reasonable accommodation of a chair for her pregnancy in January and February 2011; 4) she was denied a promotion in May 2011; 5) she was issued a fourteen day suspension on October 3, 2011; 6) she received a performance rating of "needs improvement" on November 3, 2011; 7) she was given a counseling memorandum on November 3, 2011; 8) she was placed on a Performance Improvement Plan ("PIP") on February 24, 2012; 9) DOE management refused to return her personal banking information to her; 10) DOE officials "loaded [her] Personal Security Investigative File and OPM File with defamatory and inappropriate statements" thereby affecting her ability to get a security clearance; and 11) she was terminated from her position at DOE and removed from federal service employment on April 16, 2012.

During the course of the above described incidents, plaintiff initiated administrative proceedings. On June 6, 2011 she initiated contact with an EEO counselor and on January 18, 2012, filed a formal EEO complaint with the Agency's Office of Civil Rights ("OCR"), alleging violations of Title VII and the ADA. On February 6, 2012, she formally realleged that she had been subjected to a hostile work environment. On May 24, 2012, after she was removed from federal service, plaintiff added her removal as an additional issue in her EEO complaint. The allegations described above formed the basis of plaintiff's complaint.

On January 11, 2013, the OCR issued its Final Agency Decision, finding that the defendant had offered legitimate, nondiscriminatory reasons for the actions taken and that plaintiff failed to demonstrate pretext. On January 28, 2013, plaintiff filed a mixed-case appeal to the Merit Systems Protection Board ("MSPB"). Administrative Judge Ben-Ami considered plaintiff's removal and any affirmative defenses, but declined to consider the merits of the nine other issues raised in her complaint regarding actions taken prior to her removal. This decision was confirmed by MSPB Administrative Judge Clement on November 27, 2013. On September 12, 2014 Judge Clement issued her initial decision affirming DOE's decision to remove plaintiff from federal service. On October 16, 2014, plaintiff filed a petition to review the initial decision, and on July 6, 2015 received MSPB's final order affirming the initial decision.

ECF No. 47 at 2-3.

In August of 2016, the government filed a Motion to Dismiss and for Summary Judgment

(ECF No. 18), which the Court granted in part and denied in part (ECF Nos. 46, 47).

Specifically, the Court dismissed the following claims:

- Plaintiff's Title VII intentional discrimination and retaliation claims based on (1) the denial of regular flexi-place in February 2011; (2) the denial of medical flexi-place in February 2011; (3) the denial of the reasonable accommodation of a chair in January and February

2011; and (4) DOE management's refusal to return plaintiff's personal banking information to her

- Plaintiff's Rehabilitation Act intentional discrimination claims based on (1) the denial of regular flexi-place in February 2011; and (2) DOE's alleged refusal to return banking information to plaintiff

- Plaintiff's Whistleblower Protection Act claims

The Court did not dismiss the following claims:

- Plaintiff's Title VII intentional discrimination and retaliation claims based on (1) the denial of a promotion in May 2011; (2) the 14-day suspension issued on October 3, 2011; (3) the performance rating of "needs improvement" on November 3, 2011; (4) the counseling memorandum issued on November 3, 2011; (5) the PIP issued on February 24, 2012; (6) the allegedly false and defamatory statements placed in plaintiff's Personal Security Investigative File and OPM File; and (7) the termination on April 16, 2012

- Plaintiff's Rehabilitation Act intentional discrimination claims based on (1) the denial of a promotion in May 2011; (2) the 14-day suspension issued on October 3, 2011; (3) the performance rating of "needs improvement" on November 3, 2011; (4) the counseling memorandum issued on November 3, 2011; (5) the PIP issued on February 24, 2012; and (6) the termination on April 16, 2012

- Plaintiff's hostile work environment claims brought under Title VII and the Rehabilitation Act

The Court ordered additional discovery on the surviving claims to give Ms. Webster the opportunity to find supporting evidence. After the close of discovery, DOE filed its Renewed Motion for Summary Judgment on August 31, 2019. For the reasons set forth below, the Court will grant that motion.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must "view the evidence in the light most favorable to the nonmoving party and

3

draw all reasonable inferences in its favor." *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010). To show that a dispute is "genuine" and defeat a summary judgment motion, the nonmoving party must present evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. Furthermore, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Summary judgment is also appropriate when, "after adequate time for discovery," the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## II. Title VII

### A. Race and Sex Discrimination

Federal employment discrimination is prohibited by Title VII of the Civil Rights Act of 1964, under which it is unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII claims that rely on circumstantial evidence—as opposed to direct evidence of discrimination—are analyzed under the burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the employee "must carry the

4

initial burden under the statute of establishing a prima facie case of . . . discrimination." *Id.* at 802. In cases concerning race or sex discrimination, a *prima facie* case requires a showing that "(1) [the plaintiff] is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006) (citing *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)).

If the employee establishes a *prima facie* case of discrimination, the burden "must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. The employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the [action]" so as to "raise[] a genuine issue of fact as to whether it discriminated against the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). The employer, however, "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254.

If the employer succeeds in offering legitimate, nondiscriminatory reasons for the action, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 253. The plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256. Either way, the plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Evidence of pretext may include "the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the

5

same protected group as the plaintiff" as well as any "other relevant evidence that a jury could *reasonably* conclude evinces an illicit motive." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (emphasis added).

Related to sex discrimination is discrimination based on pregnancy. Title VII specifically precludes discrimination on the basis of "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). It mandates that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). Plaintiffs may bring disparate treatment claims under § 2000e(k). *See Young v. United Parcel Serv.*, 575 U.S. 206, 212 (2015).

### B. Retaliation

Title VII also prohibits retaliation for "an employee's having opposed, complained of, or sought remedies for unlawful workplace discrimination." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) (citing 42 U.S.C. § 2000e-3(a)). Retaliation claims are subject to the same *McDonnell Douglas* burden shifting standard as discrimination claims. *Walker*, 798 F.3d at 1091. To establish a *prima facie* case of retaliation, "the plaintiff must allege that she engaged in activity protected by Title VII, the employer took adverse action against her, and the employer took that action because of the employee's protected conduct." *Id.* at 1091-92. With respect to the third element—causation—"Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Nassar*, 570 U.S. at 360. Thus, "it is not sufficient for plaintiff to demonstrate that a reasonable jury could find that retaliatory animus . . . was *a* cause for [the adverse action]. Rather, plaintiff must demonstrate that there is a genuine issue of

material fact as to whether retaliatory animus was *the* cause for the [adverse action]." *Rattigan v. Holder*, 982 F. Supp. 2d 69, 81 (D.D.C. 2013), *aff'd*, 780 F.3d 413 (D.C. Cir. 2015).

Once the plaintiff establishes a *prima facie* case, "the burden shifts to the employer to identify the legitimate, non-discriminatory or non-retaliatory reason on which it relied in taking the complained-of action." *Walker*, 798 F.3d at 1092. Then, the plaintiff must show "that the employer's stated reasons were pretextual, and the real reasons were prohibited discrimination or retaliation." *Id.* The aforementioned categories of evidence demonstrating pretext in discrimination claims apply to retaliation claims.

### C. Hostile Work Environment

Title VII also prohibits creating a hostile work environment, considering it to be a form of discrimination. "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). Courts are to look "to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance" to determine whether a hostile work environment exists. *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). The standard for such a claim is extremely high, and as the D.C. Circuit has explained, "a few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).

## D. Simplified McDonnell Douglas Framework

Despite its ubiquitous presence in Title VII cases, the issue of whether the plaintiff has established a *prima facie* case of discrimination under *McDonnell Douglas* "is almost always irrelevant." *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). "[B]y the time the district court considers an employer's motion for summary judgment . . . the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision," which is "important because once the employer asserts a legitimate, non-discriminatory reason, the question [of] whether the employee actually made out a prima facie case is 'no longer relevant' and thus 'disappear[s]' and 'drops out of the picture.'" *Id.* (quoting *Hicks*, 509 U.S. at 510-11). Therefore, the D.C. Circuit has stated:

> [i]n a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

*Id.* at 494. This rule applies to retaliation claims as well. *See Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009).

The *Brady* rule, however, does not apply in every case. As the *Brady* Court noted, the question of whether the plaintiff has established a *prima facie* case "is *almost* always irrelevant," meaning that it is sometimes still relevant. 520 F.3d at 493 (emphasis added). When an employer challenges whether an action taken against the plaintiff was an "adverse employment action" (which is an element of the *prima facie* case), courts should first determine whether the action was legally "adverse" before deciding whether that action occurred as a result of discrimination

or retaliation. *See Baloch*, 550 F.3d at 1196-97; *Nurriddin v. Bolden*, 40 F. Supp. 3d 104, 119 (D.D.C. 2014) (Bates, J.), *aff'd*, 818 F.3d 751 (D.C. Cir. 2016). Furthermore, it is important to note that the evidence used to support a plaintiff's *prima facie* case, such as evidence that she was treated differently from similarly situated employees (also known as comparators), does not become immediately irrelevant. Instead, "such evidence (or the lack of such evidence) may be relevant to the determination at summary judgment or trial [of] whether intentional discrimination occurred." *Brady*, 520 F.3d at 494 n.2.

### III. Americans with Disabilities Act/Rehabilitation Act

Plaintiff also brings claims under the ADA. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).[1] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as "the operation of a major bodily function." 42 U.S.C. § 12102(2). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA excludes from its definition of "employer" the United States

---

[1] This is a provision of the ADA. The Rehabilitation Act specifically states that "the term 'individual with a disability' means . . . any person who has a disability as defined in section 12102 of Title 42." 29 U.S.C. § 705(20)(B).

and corporations wholly owned by the United States, meaning that it does not apply to federal government employees. *See* 42 U.S.C. § 12111(5)(B)(i).

Although the ADA does not provide a remedy for federal employees, the Rehabilitation Act (which incorporates the standards applied in ADA cases), *Ward v. McDonald*, 762 F.3d 24, 28 (D.C. Cir. 2014) (citing 29 U.S.C. § 794(d)), provides a remedy for federal employees alleging disability discrimination. *See Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993). It provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). The Rehabilitation Act encompasses disparate treatment claims (intentional discrimination), failure to accommodate claims, and hostile work environment claims. *Von Drasek v. Burwell*, 121 F. Supp. 3d 143, 154 (D.D.C. 2015) (collecting cases).

Again, the *McDonnell Douglas* burden shifting framework applies to discrimination claims brought under the Rehabilitation Act. *Kersey v. Wash. Metro. Area Transit Auth.*, 533 F. Supp. 2d 181, 189-90 (D.D.C. 2008), *aff'd*, 586 F.3d 13 (D.C. Cir. 2009). To establish a *prima facie* case of discrimination under the Rehabilitation Act for disparate treatment, "a plaintiff must show, by a preponderance of the evidence, that she '[has] a disability within the meaning of the [Act]; that [she] was 'qualified' for the position with or without reasonable accommodation; and that [she] suffered an adverse employment action because of [her] disability.'" *Thompson v. Rice*, 422 F. Supp. 2d 158, 166 (D.D.C. 2006), *aff'd*, 305 F. App'x 665 (D.C. Cir. 2008). The burden then shifts back to the employer to provide legitimate, nondiscriminatory reasons for the action, and then again back to the plaintiff to demonstrate pretext. *Kersey*, 533 F. Supp. 2d at

190. Note, however, that the simplified *McDonnell Douglas* framework announced in *Brady* also may apply to discrimination claims brought under the Rehabilitation Act. *See Kersey*, 586 F.3d 13, 17 n.2 (D.C. Cir. 2009); *Ramsey v. Moniz*, 75 F. Supp. 3d 29, 48 (D.D.C. 2014).

The ADA and the Rehabilitation Act also cover claims for hostile work environment based on disability. *See Aldrich v. Burwell*, 197 F. Supp. 3d 124, 135 (D.D.C. 2016); *Floyd v. Lee*, 968 F. Supp. 2d 308, 328 & n.4 (D.D.C. 2013) (noting that "[a]lthough this circuit has not resolved the question, four circuits have found that hostile work environment claims are available under the ADA," and citing cases from the Tenth, Eighth, Fifth, and Fourth Circuits). To state a *prima facie* case of hostile work environment, a "plaintiff must show that (1) [s]he is a member of a protected class, in this case a 'qualified individual with a disability;' (2) [s]he was subject to unwelcome harassment; (3) the harassment occurred because of [her] disability; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment, but took no action to prevent it." *Pantazes v. Jackson*, 366 F. Supp. 2d 57, 71 (D.D.C. 2005) (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003)). Failure to accommodate may underlie hostile work environment claims in circumstances wherein "the jury can weigh a wrongful denial of accommodation alongside evidence of other harassment, and that other evidence can augment the weight of the denial by suggesting discriminatory animus." *Floyd v. Lee*, 85 F. Supp. 3d 482, 517 (D.D.C. 2015).

## ANALYSIS

### I. The Negative Performance Review and Counseling Memorandum Are Not Adverse Actions.

DOE argues that some of Ms. Webster's claims fail because she has not alleged any adverse action. The Court agrees that the November of 2011 performance review and counseling memorandum do not constitute legally cognizable adverse actions. To qualify as an adverse

11

action, there must be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant changes in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003). Notably, "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001). Rather, an employer's actions must affect a term, condition, or privilege of employment or future employment opportunity. *Ortiz-Diaz v. U.S. Dep't of Hous. & Urban Dev.*, 867 F.3d 70, 73 (D.C. Cir. 2017).

Looking first at the negative performance review that Ms. Webster received in November of 2011, "performance reviews typically constitute adverse actions *only* when attached to financial harms, such as evaluations that could affect the employee's position, grade, level, salary or promotion opportunities." *Baloch*, 550 F.3d at 1199 (emphasis added). In the years since the *Ortiz-Diaz* decision, courts have continued to find that negative annual performance appraisals and improvement plans do not constitute adverse actions absent evidence of a change in the employee's benefits, responsibilities, or job titles.[2] *See, e.g., Walden v. Patient-Centered Outcomes Research Inst.*, 304 F. Supp. 3d 123, 136-37 (D.D.C. 2018). Even after the opportunity for full discovery, Ms. Webster has been unable to demonstrate that the performance review in question had a negative financial impact. She points to the agency's refusal to promote her in May of 2011, but that decision came approximately six months before the negative review, meaning that the review could not possibly have been the basis for denial of a promotion. Therefore, the performance review in this case does not constitute an adverse action.[3]

---

[2] In its previous Memorandum Opinion, the Court noted that as of August of 2017, the effects of the *Ortiz-Diaz* decision were still uncertain. *See* ECF No. 47 at 16.
[3] Even if the negative performance review did constitute an adverse action, the Court would still grant summary judgment for the defense for the reasons explained in later sections of this Memorandum Opinion.

Similarly, Ms. Webster has been unable to show that the counseling memorandum constituted an adverse action. Courts both before and after the *Ortiz-Diaz* decision have held that counseling memoranda are generally not adverse actions. *See, e.g.*, *Jimenez v. McAleen*, 395 F. Supp. 3d 22, 39 (D.D.C. 2019) (finding that a non-abusive counseling email did not constitute an adverse action); *Tillman v. Barr*, 2019 U.S. Dist. LEXIS 103463, 1:17-cv-475 at *24-25 (D.D.C. June 20, 2019) (holding that a letter of reprimand with job-related criticisms and no abusive language was not an adverse action under Title VII). The counseling memorandum in this case was not abusive in tone and was a routine way to help an employee who had received a negative review learn how to improve. Therefore, the counseling memorandum does not constitute an adverse action.[4]

In her opposition, Ms. Webster attempts to argue that these are adverse actions because they negatively affected future employment prospects. She claims that she has had to disclose the negative performance evaluation when applying for new jobs. This argument, however, represents a fundamental misunderstanding of the law. When analyzing whether an action is adverse, the Court must look only at the action's impact on the position that the plaintiff held at the time, not at the impact that it had on future jobs with employers other than the defendant. Therefore, even if the negative performance evaluation and counseling memorandum have negatively impacted her job search, they still do not constitute adverse actions for the purposes of this case. Similarly, her argument about the performance review and/or memorandum negatively impacting her chances of obtaining a within-grade increase at DOE also fails because it is purely speculative; she has provided no evidence that she was even being considered for an increase, nor has she provided evidence that these actions had any impact on such a decision. Therefore,

---

[4] Even if the counseling memorandum did constitute an adverse action, the Court would still grant summary judgment for the defense for the reasons explained in later sections of this Memorandum Opinion.

Ms. Webster has failed to show that either the performance review or counseling memorandum constituted an adverse action.

## II. The Agency Had Legitimate, Nondiscriminatory, Nonretaliatory Reasons for Any Adverse Actions Taken Against Ms. Webster.

To the extent that DOE did take adverse actions against Ms. Webster, it had legitimate, nondiscriminatory, nonretaliatory reasons for doing so. Looking first at the denial of a promotion in May 2011, the agency clearly had legitimate reasons for refusing to promote Ms. Webster from GS-13, Step 3 to GS-14. The evidence supports DOE's argument that she would not have been able to perform at the GS-14 level. Her 2009 performance review (which is not a basis for this lawsuit) indicated that she needed improvement, and her supervisor had repeatedly told her that she needed to improve the quality of her work and be more mindful of deadlines. Despite these critiques from both her direct supervisor and her second-line supervisor, there is no evidence that she improved the quality of her work. Inability to perform at a higher level is a legitimate reason for denying someone a promotion. Because (as explained below) Ms. Webster has been unable to show that DOE's stated basis for denying her a promotion was merely pretextual, and no reasonable juror could find otherwise, summary judgment for the defense is appropriate.

Turning to Ms. Webster's 14-day suspension in October of 2011, the evidence shows that the agency had legitimate, nondiscriminatory, nonretaliatory reasons for issuing such a suspension. Ms. Webster frequently exhibited disrespectful behavior and engaged in inappropriate conduct in the workplace. She had previously been suspended for one day in February of 2010 (which is not a basis for this lawsuit), yet her behavior never improved. She was known to yell at supervisors and frequently engaged in name-calling while blatantly refusing

to complete the tasks that were assigned to her. DOE documented numerous incidents suggesting that she had an anger-management problem, an example being her sending of malicious emails. She was also routinely late to work. These are merely a few of the many facts that DOE cites in explaining her suspension. Furthermore, upon receiving notice of her suspension, Ms. Webster did not even try to deny that the events prompting her suspension had occurred. Because (as explained below) Ms. Webster has been unable to show that DOE's stated basis for issuing a 14-day suspension was merely pretextual, and no reasonable juror could find otherwise, summary judgment for the defense is appropriate.

Even if the negative 2011 performance review did constitute an adverse action, the evidence shows that there were legitimate, nondiscriminatory, nonretaliatory reasons for giving a rating of "Needs Improvement." Quite simply, Ms. Webster failed to adequately perform her duties. In 2011, four of her assignments were either untimely or not well-written. For example, her supervisor assigned her a research project in early June of 2011 which should have taken mere hours to complete. Her supervisor repeatedly asked her about the assignment's status, but Ms. Webster went on maternity leave on July 1, 2011 without ever having completed it. Similarly, even if the counseling memorandum did constitute an adverse action, the evidence shows that it was not issued for discriminatory or retaliatory reasons. DOE issued the memorandum to assist Ms. Webster in improving her job performance. For example, it recommended keeping better track of deadlines and contained suggestions for strengthening her time-management skills. It is also worth noting that a counseling memorandum is mandatory when an employee receives a rating of "Needs Improvement," so if the negative review was legitimate, it likely follows that the counseling memorandum was also legitimate. Because (as explained below) Ms. Webster has been unable to show that DOE's stated reasons for issuing a

negative performance review and subsequent counseling memorandum in 2011 were merely pretextual, and no reasonable juror could find otherwise, summary judgment for the defense is appropriate.

Looking at the February of 2012 PIP, the evidence shows that it was based on legitimate, nondiscriminatory, nonretaliatory reasons. Ms. Webster was told that she had 90 days to improve her performance after receiving the counseling memorandum, yet she failed to do so. This is why she was placed on a PIP, which was designed to help her improve her performance. It was not discriminatory or retaliatory—in fact, it demonstrates that even after she refused to change her behavior upon DOE's issuance of the counseling memorandum, the agency still made an effort to help her keep her job. Because (as explained below) Ms. Webster has been unable to show that DOE's stated reasons for placing her on a PIP were merely pretextual, and no reasonable juror could find otherwise, summary judgment for the defense is appropriate.

Moving to the statements in her OPM and security files, the evidence shows that these statements were not made for discriminatory or retaliatory reasons. Ms. Webster cannot show that her supervisors made statements that they knew to be false, which is required for the *Rattigan* exception to apply, meaning that this claim cannot move forward.[5] Even if the claim could proceed, the government would still prevail on the merits. Ms. Webster is unable to show that these statements were false, let alone *knowingly* false. If anything, the evidence seems to confirm the truth of the statements at issue. The agency's Renewed Motion for Summary Judgment reviews the evidence supporting these allegedly false statements in great detail. *See* ECF No. 70 at 16-20. Essentially, the evidence shows that the following is all true (or, at the very

---

[5] In *Rattigan v. Holder*, the D.C. Circuit held that in some cases, the Supreme Court's holding in *Dep't of the Navy v. Egan*, 484 U.S. 518 (1988), would not bar a claim if the plaintiff "can show that agency employees acted with a retaliatory or discriminatory motive in reporting or referring information that they knew to be false." 689 F.3d 764, 767 (D.C. Cir. 2012).

least, that Ms. Webster's supervisors did not *knowingly* make false statements regarding the

following): (1) Ms. Webster had a problem with authority and frequently yelled at and spoke

disrespectfully to her supervisors; (2) Ms. Webster willfully disregarded rules and directives, as

exemplified by her refusal to comply with any counseling memoranda; (3) Ms. Webster had

anger-management problems and often engaged in name-calling; (4) Ms. Webster did not handle

stress well and would lash out at her supervisors; (5) Ms. Webster used email irresponsibly and

maliciously; (5) Ms. Webster engaged in self-destructive conduct that raised questions about her

mental stability; (6) Ms. Webster exhibited poor judgment and refused to adjust her behavior

despite numerous warnings; and (7) Ms. Webster did not perform the tasks that she was assigned

or performed them poorly and was unable to meet deadlines. All of these allegations are

supported by the ample documentation that DOE provided, and Ms. Webster has failed to refute

(or even attempt to refute) the veracity of these statements. She has also failed to show that her

supervisors actually knew them to be false.[6] Because (as explained below) Ms. Webster has been

unable to show that the statements were knowingly false or that DOE's rationale for placing

them in her file was merely pretextual, and no reasonable juror could find otherwise, summary

judgment for the defense is appropriate.

Finally, the evidence shows that DOE had legitimate, nondiscriminatory, nonretaliatory

reasons for terminating Ms. Webster's employment in April of 2012. The facts already described

in this Memorandum Opinion coupled with the rationale stated in DOE's termination letter are

more than sufficient to justify her removal. The following are excerpts from the April 5, 2012

removal letter:

> . . . Based on the record, I find that you (1) inappropriately delayed nearly one week,
> from February 12, 2012 to February 27, 2012, in picking up files of two cases

---

[6] The *Rattigan* standard requires actual knowledge of falsehoods. The fact that someone should have known that the statements were false is insufficient. *Rattigan*, 780 F.3d 413, 418 (D.C. Cir. 2015).

17

assigned to you, despite requests from your supervisor to do so; and (2) failed to attend scheduled meetings with your supervisor on February 28, 2012 and March 6, 2012, despite being instructed to do so.

. . . I have thoroughly reviewed the record before me, and I find the documentation cited by the proposing official credible. In the Notice of Proposed Removal, you were advised of your right to respond orally, in writing, or both within 10 calendar days from the date of receipt. You received the Notice of Proposed Removal on March 14, 2012 and did not file an oral or written response. I find that the specific reasons for the proposal to remove you from your position and from Federal service are supported by the record and therefore are sustained.

. . . My decision also takes into account your history of misconduct, for which you have received three disciplinary actions: (1) a one-day suspension issued to you on February 24, 2012, based upon three documented incidents of misconduct from August 2009 through January 2010; (2) a 5-day suspension issued to you on May 21, 2010, based on inappropriate behavior towards your supervisor and your failure to comply with her instructions set forth in a March 16, 2010, counseling memorandum; and (3) a 14-day suspension issued to you on October 27, 2011, as a result of disrespectful and argumentative behavior towards your supervisor. These previous disciplinary actions should have put you on notice that misconduct of this nature is unacceptable. The previous disciplinary actions cautioned you that further offenses would lead to progressively severe discipline, up to and including removal. Notwithstanding these warnings, you have continued to display disrespectful conduct towards your supervisor.

I also considered your potential for rehabilitation. During the interim following each of the disciplinary actions described in the foregoing paragraph, you were encouraged and given a full opportunity to rehabilitate your behavior. You not only neglected to do so, but continued to display similar misconduct. At no point did you indicate you were in any way contrite. I therefore have no confidence that you will not engage in similar incidents of misconduct in the future.

Finally, I considered whether there are any mitigating factors and I find that there are none. The effect of your continued conduct has been that everyday office-related encounters cannot be effectively carried out.

ECF No. 70-5 at 10-12. Ms. Webster has identified no evidence suggesting that race, gender, or pregnancy were plausible bases for DOE's decision to terminate her. *See Johnson v. Perez*, 823 F.3d 701, 703 (D.C. Cir. 2016) (explaining that "no reasonable juror could find that the [defendant's] stated, nondiscriminatory reasons for dismissing [plaintiff] were not its real reasons" when plaintiff was clearly terminated due to deficient performance and argumentative

responses to supervisor feedback). Because (as explained below) Ms. Webster has been unable to show that the stated reasons for her termination were merely pretextual, and no reasonable juror could find otherwise, summary judgment for the defense is appropriate.

In her opposition, Ms. Webster tries—and fails—to demonstrate pretext. One method she uses to try and show such pretext is providing evidence of two supposed comparators. Quite simply, she has failed to prove that she was similarly situated to either one of them. Looking first at Diane DeMoura, a white female who was supposedly promoted three grade levels in the same amount of time that Ms. Webster was promoted one grade level, Ms. Webster has brought forth no evidence that Ms. DeMoura had any of the same behavioral or performance issues as Ms. Webster. It does not appear that Ms. DeMoura refused to complete assignments, repeatedly arrived late to work, yelled at supervisors, misused her email, etc. Therefore, no reasonable juror could find that Ms. DeMoura is an adequate comparator. Moving to Steven Fine, it is true that he received a letter reprimanding him for unbecoming behavior after he got angry and cursed during a meeting with a supervisor. This, however, is merely one incident—there is no evidence that Mr. Fine engaged in *repeated* improper behavior, nor is there any indication that he refused to complete assignments or turned in poor work product. Therefore, no reasonable juror could find that Mr. Fine is an adequate comparator.

Ms. Webster also tries to argue that she was mistreated after obtaining certain accommodations for her pregnancy. In short, she provides no supporting evidence for this claim. The Court gave her ample opportunity to take full discovery, yet she has come up with no credible documentation or statements from witnesses that would lead the Court to believe there is any truth to this argument. It is not sufficient simply to say, "I was mistreated after I obtained accommodations for my pregnancy." Instead, Ms. Webster needs to show a direct causal link

between the accommodations and alleged mistreatment, which she has been entirely unable to do. Of course, as the D.C. Circuit explained in *Colbert v. Tapella*, a plaintiff does not have to show that discrimination or retaliation was the *actual* reason for the adverse action. *See* 649 F.3d 756, 760 (D.C. Cir. 2011) (finding that the District Court erred in requiring plaintiff to show not only that defendant's supposedly legitimate reason was pretextual, but also that discrimination was the actual reason for the adverse action). In order to survive summary judgment, however, Ms. Webster still does have to show *some* evidence that could lead the fact-finder to believe that DOE may have acted based on retaliation or discrimination. In light of the complete paucity of evidence regarding but-for causation, no reasonable juror could find that DOE took any adverse actions against Ms. Webster due to her receipt of accommodations for her pregnancy. Therefore, the Court must grant summary judgment for the defense.

Finally, Ms. Webster attempts to convince this Court that DOE's actions were retaliatory through a timeline she created showing the alleged adverse actions and how they supposedly correspond with her EEO activity. Apparently, she expects the Court to read this timeline and infer that DOE's motives must have been retaliatory. This timeline neither establishes a *prima facie* case of retaliation nor demonstrates pretext. Although suspicious timing can in some cases be evidence of retaliation, the evidence here overwhelmingly shows that Ms. Webster was fired for her misconduct and inability to complete assigned tasks, not for any retaliatory reasons. Her timeline does not overcome the substantial evidence DOE has presented to demonstrate that it fired her for legitimate reasons. In coming to this conclusion, the Court is not merely weighing the plaintiff's evidence against DOE's evidence—rather, the Court has determined that in light of this evidence, no reasonable juror could find that DOE's stated reasons for firing her were mere pretext, meaning that the Court must grant summary judgment for the defense.

**III. Ms. Webster Was Not Subjected to a Hostile Work Environment.**

Ms. Webster has failed to meet the high bar to show that DOE "is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris*, 510 U.S. at 21. Quite simply, the evidence does not support Ms. Webster's version of events. More importantly, however, even if the Court assumed that Ms. Webster's allegations were true, those allegations do not amount to a successful hostile work environment claim. As previously explained, all of DOE's allegedly unlawful actions were the result of Ms. Webster's own misconduct. Courts have firmly rejected hostile work environment claims that are based on supervisors' work-related actions or plaintiff's mere dissatisfaction with the job. For example, the Court in *Bonnette v. Shinseki* rejected a hostile work environment claim based on the plaintiff's placement on PIP, her supervisors' micromanagement of her work, and written admonishment. *See* 907 F. Supp. 2d 54, 81 (D.D.C. 2012). Similarly, the Court in *Brooks v. Grundmann* rejected a hostile work environment claim based on supervisors' criticisms of plaintiff's work and issuance of negative performance reviews, finding these actions to be well within the bounds of normal supervisory actions. *See* 851 F. Supp. 2d 1, 6-7 (D.D.C. 2012). Courts have even rejected hostile work environment claims in cases with far more severe allegations than the ones present here. *See, e.g.*, *Holmes-Martin v. Sebelius*, 693 F. Supp. 2d 141, 165 (D.D.C. 2010) (rejecting a hostile work environment claim that was based on public criticism, reduced responsibilities, exclusion from meetings, and unrealistic deadlines); *Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009) (rejecting a hostile work environment claim that was based on plaintiff's allegations that he was repeatedly yelled at and threatened with job-related consequences for refusal to meet workplace expectations); *Nurriddin*, 674 F. Supp. 2d at

93-95 (rejecting a hostile work environment claim that was based on plaintiff's supervisor making disparaging remarks about plaintiff's EEO complaints and attempting to end plaintiff's eligibility for workers' compensation). Essentially, the evidence shows that Ms. Webster was an exceedingly poor government employee who is now trying to turn around and blame DOE for her own failures. The Court will not allow her wholly unsupported hostile work environment claim to proceed any further. Because no reasonable juror could find that Ms. Webster was subjected to a hostile work environment, summary judgment for the defense is clearly appropriate.

## CONCLUSION

Based on the foregoing, the Court will **GRANT** Defendant's Renewed Motion for Summary Judgment (ECF No. 70).

It will be **ORDERED** that this case is **DISMISSED** with prejudice.

A separate Order accompanies this Memorandum Opinion.

Date: 3/10/2020

Royce C. Lamberth
United States District Court Judge